# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

Courtney Dover,                          :        Case No.  5:08CV2130
                                         :
                    Petitioner           :        Judge Donald C. Nugent
                                         :
           v.                            :        Magistrate Judge David S. Perelman
                                         :
Warden, Belmont Correctional Institution, :
                                         :
                    Respondent           :        **REPORT AND RECOMMENDED**
                                         :        **DECISION**
                                         :

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his conviction pursuant to a jury trial of one count of felonious assault with a firearm specification, upon which he was sentenced to seven years incarceration on the main count and a mandatory three years on the specification, the latter to be served consecutive to the former; one count of improperly handling a firearm while in a motor vehicle, upon which he was sentenced to seventeen months incarceration, to be served concurrently with the sentence upon the first count; and one count of child endangerment, upon which he was sentenced to 180 days, to be served concurrently with the sentence on the first count, for an aggregate sentence of ten years.

The petitioner appealed his convictions to the Ohio Fifth District Court of Appeals, alleging the following six assignments of error:

I.   The trial court's finding of guilt is against the manifest weight and sufficiency of the evidence.

II.  The trial court abused its discretion by improperly impeding the appellant's ability to cross examine the state's witnesses.

III. The appellant was deprived of due process of [sic] by the misconduct of the prosecutor.

IV.  The appellant was denied his rights to due process and of assistance of counsel because his trial counsel provided ineffective assistance.

V.   The trial court erred in sentencing the appellant in violation of *State v. Foster*.

VI.  The trial court committed error by improperly charging the jury.

The facts in petitioner's criminal case were summarized by the state appellate court in pertinent part as follows:

On January 12, 2007, Perry Township Police Officer William Watson responded to the scene of a shooting at the Marc's Plaza on Tuscarawas Street in Perry Township, Ohio.  As he pulled into the parking lot, he saw a man lying on the ground bleeding from a large wound in the buttocks area.  Officer Watson saw no weapon but taped off the area as a crime scene and asked for the names of any witnesses.  Officers located the injured man's vehicle, still running, in the parking lot.  Sarah Dotson, who was shopping with her daughter, told Officer Watson that she heard what sounded like a cap gun and saw a man stumble, and collapse.  She approached the injured man and determined that he was bleeding.  The man requested that she contact his girlfriend.  She then saw a dark car with circular brake lights leave the parking area.  Ms. Dotson called 911.

The police did not recover a weapon or shell casings from the scene of the incident.  Prior to being taken by ambulance to the hospital, the injured man told police that "Corey" had shot him.

The ambulance squad arrived and took the injured man to Aultman Hospital.  The injured man was later identified as George Curlutu. George Curlutu is a twice-convicted unemployed felon.  In 2000, he

2

was convicted of possession of cocaine and marijuana and sentenced to three (3) years in prison. In 2004, he was convicted of a second count of possessing cocaine and tampering with evidence. He served a two (2) year prison term.

Mr. Curlutu and appellant were acquaintances and met at St. Mary's Church in Massillon, Ohio at a Texas Hold-Em tournament. They occasionally played poker and smoked weed at appellant's residence on 4th Street by the Canton Baptist Temple. The day of the shooting, January 12, 2007, appellant used his cell phone to call Mr. Curlutu and ask him to meet him at the Aldi's parking lot. Sensing a chance to go on a "blunt ride"–where you smoke weed together–Mr. Curlutu skipped his classes at barber school and met appellant at the parking lot. Mr. Curlutu knew appellant only as "C" or "Corey."

Mr. Carlutu [sic] testified that on the day in question he smoked marijuana. He further stated that he was under the influence of marijuana at the time of the incident. Medical records indicated that he also had cocaine and valium in his system. Mr. Carlutu [sic] denied being under the influence of those substances. However, he admitted that he had used narcotics in the days preceding the incident.

Mr. Curlutu pulled into the parking lot and waited for appellant who arrived driving a blue Chevrolet Impala with tinted windows. Mr. Curlutu noticed a little girl in a car seat dressed in a pink coat. Mr. Curlutu exited his car, leaving the motor running, and got into appellant's car. Appellant asked Mr. Curlutu if he could borrow some money– $300 or $400. Mr. Curlutu told appellant he did not have money like that. Appellant responded by reaching down to the left hand part of the door and pulling out a gun–a longer barrel revolver. Mr. Curlutu's first reaction was to grab the revolver with his left hand. A struggle ensued and the revolver landed on the car seat. Mr. Curlutu opened the car door to run and was shot in the buttocks–a near contact gunshot wound.

Mr. Curlutu fell down and appellant pulled out of the parking lot. Mr. Curlutu was taken to Aultman Hospital. Surgery was performed and eventually a deformed bullet–a .38 special or .357-caliber bullet-was removed from his buttocks area.

Detective Matthew Barker of the Perry Township Police Department was called to the scene to assist in the investigation of the shooting.

3

Detective Barker talked with Mr. Curlutu at the hospital.  Mr. Curlutu called his friend, Todd McCune, to learn more about the shooter.  Detective Barker learned the shooter's first name was "Courtney," that he drove a blue Chevrolet Impala with tinted windows and lived by the Canton Baptist Temple.  Detective Barker also learned that the shooter's cell phone number was (330) 317-3453 and that he had purchased the phone or minutes for the phone at Hever's Meats.  Armed with the cell phone number, Detective Barker went to Hever's Meats and learned that the cell phone number belonged to appellant, and that his address was 4456 4th Street N.W., Perry Township, Ohio.  Mr. Curlutu showed Detective Barker the residence where the shooter resided and it matched the address of appellant that Detective Barker had obtained from Hever's Meats.

Detective Barker placed a photograph of appellant in a photo lineup with five other males with the same physical characteristics.  Two days after the shooting, Mr. Curlutu identified appellant's photograph as the shooter and told Detective Barker that he was 100 percent sure.

Molly Felder, the appellant's neighbor, saw the appellant pulling out of his driveway near the time of the incident.  She observed him to be wearing a light colored jacket.

Detective Barker went to the home on 4th Street identified as appellant's residence. Detective Barker saw signs that someone was home, knocked on the door but received no response.  Finally, after about thirty minutes, Tammy Young, appellant's girlfriend and mother of his one-year-old daughter, came home. Ms. Young gave Detective Barker permission to enter the home. Inside the home Detective Barker found appellant carrying a blue cell phone with a telephone number (330)317-3453.  Detective Barker also collected from the home three coats or jackets belonging to appellant and a box of Winchester .38-caliber ammunition.  A blue Chevrolet Impala belonging to Ms. Young was also at the residence.  Ms. Young testified the appellant had keys to the car.  Ms. Young told the police that she was at work at the time of the incident.  The appellant was watching their child when she left, but could have taken the child to a baby sitter.  She testified that Mr. McCune has come to the house on numerous occasions in the past to purchase drugs.

Mr. Curlutu identified Ms. Young's car as the car used by the

4

shooter; Ms. Dotson also identified the vehicle as the car that drove out of the Aldi parking lot.

Appellant was taken to the Perry Police Department. Appellant denied knowing Mr. Curlutu when officers showed him his picture.

The three coats or jackets belonging to appellant were taken from the home and sent to the Stark County Crime Laboratory for DNA testing. Officers also obtained and sent to the Crime Laboratory oral swabs from the victim, Mr. Curlutu, for comparison. Kylie Graham, a technician with the laboratory compared three areas of bloodstains on a gold coat belonging to appellant with the oral swabs taken from the inner cheek of Mr. Curlutu. Graham opined that the bloodstains on the coat matched Mr. Curlutu's blood in three areas:

"In this case, I got back a statistic for the bloodstain on the sleeve of the coat, the back of the coat, and the major profile from the left front of the coat, that was 1 in more than 280 billion." Tammy Young testified that the light colored jacket in evidence belonged to the appellant.

Michael Short, of the Stark County Crime Laboratory, examined the bullet removed from Mr. Curlutu's buttocks and gunshot residue on blue and white shorts worn by Mr. Curlutu when he was shot. Mr. Short opined that the bullet was a .38 special or .357-caliber bullet that was shot from an operable firearm, most likely a revolver.

The case was scheduled for a jury trial to begin on April 10, 2007. Prior to the beginning of voir dire, the State made a motion in limine to prohibit appellant from arguing that the victim was a drug dealer. Appellant's trial counsel objected arguing that his defense was that this incident involved a "drug deal gone bad." The trial court granted the motion in limine but indicated that it would allow appellant to re-address the issue based upon the testimony and evidence presented during trial.

After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of guilty to all the charges in the indictment. At the sentencing hearing, the trial court merged the felonious assault conviction with the conviction for improperly handling a firearm in a motor vehicle finding that they arose from the same animus. Appellant received a prison sentence of seven years with a mandatory sentence of three years on the firearm specification for a total of ten years.

5

On March 10, 2008 the state appellate court affirmed the judgment of conviction and sentence.

Petitioner, acting pro se, appealed the state appellate court ruling to the Ohio Supreme Court alleging the following seven propositions of law:

> **Proposition of Law No. I:** The Trial Court's finding of guilt is against the manifest weight and sufficiency of the evidence.
>
> **Proposition of Law No. II:** The Trial Court abused its discretion by improperly impeding the Appellant's ability to cross examine the state's witnesses.
>
> **Proposition of Law No. III:** The Appellant was deprived of due process by the misconduct of the prosecutor.
>
> **Proposition of Law No. IV:** The Appellant was denied his rights to due process and of the effective assistance of counsel.
>
> **Proposition of Law No. V:** The Trial Court erred in sentencing the Appellant in violation of *State v. Foster*.
>
> **Proposition of Law No. VI:** The Trial Court committed error by improperly charging the jury.
>
> **Proposition of Law No. VII:** The Appellant was denied his right to due process and of assistance of counsel because his Appellate Counsel provided ineffective assistance.

On March 10, 2008 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  Petitioner did not appeal this decision to the United States Supreme Court.

On September 4, 2008 the petitioner filed the instant petition, in which he raises the following six claims for relief:[1]

> **A.  GROUND ONE**: The Trial Court's findings of guilt was [sic] against the manifest weight and sufficiency of the evidence.

---

[1]As did the respondent, this Court reads the petitioner's claims for relief as stating the claim in the first sentence, followed by supportive information.

**Supporting FACTS[2]:** First and most important, the state failed to meet its burden of proof in that the only person to provide evidence as to how the shooting occurred was the victim George Carlutu[3]. Mr. Carlutu is a twice convicted unemployed ex-felon...The only physical evidence recovered from Petitioner linking him to Carlutu was DNA material found on Petitioner's jacket and the ammunition taken into evidence, ammunition that did not match the bullet taken from Carlutu. Crime lab did not reflect that any other ammunition taken from Petitioner's home match [sic] the bullet taken from Carlutu's buttocks. Further, while DNA was found on Petitioner's jacket, it was not found in Petitioner's car where Carlutu claimed that he was shot. DNA material could have very easily ended up on Petitioner's jacket when he attempted to defend himself from a robbery.

B.  **GROUND TWO:** The Trial Court abused its discretion by improperly precluding Petitioner from cross examining the State's witness and denying him his right to Due Process.

**Supporting FACTS**: In Petitioner's trial, the trial court abused its discretion by improperly limiting defendant's cross-examination of key witnesses. First, the theory of defense was that the incident was a drug deal gone bad. The trial court prohibited the defense from inquiry as to this defense...This information was not only relevant and admissible, for several reasons, although it was prohibited by the court. The facts of this case lent themselves to such an interpretation, in light of Carlutu's prior history of dealing drugs. That is, a meeting was set up in a secluded area of a parking lot away from both their residences. Petitioner also begs the Court to consider that Carlutu's car was found still running.

C.  **GROUND THREE:** Petitioner was deprived of Due Process of by [sic] the misconduct of the prosecutor.

**Supporting FACTS**: The prosecutor declared to the jury, "I believe that there is only one story you can believe, its [sic] the story by George Carlutu. He told you what happened in that

---

[2]The supporting facts for each claim for relief are shortened, summarized versions of petitioner's originals.

[3]The petitioner misspelled the victim's name throughout the claims for relief, and this Court merely copied petitioner's statements verbatim.

case." In stating this to the jury, the prosecutor clearly violated the aforementioned cases and endorsed the credibility of the state's witness. The statement of the prosecutor was particularly prejudicial because the criminal case was hinged on the credibility of the state's flawed witness: twice convicted, under the influence of marijuana and a couple of other illegal drugs; George Carlutu. In effect, the state's endorsement told the jury that in spite of his history of criminal activity, his admitted drug consumption at the time of the incident, this time, the state believed him and so could they. The prosecutor also stated to the jury, " would ask you to again to review the actual evidence that was put before you, the actual testimony that you heard with your own ears, and find the defendant guilty." Further, the prosecutor intentionally made reference to the fact that Petitioner chose to exercise his right not to testify at trial.

**D.  GROUND FOUR:** Petitioner was deprived of Due Process and of Assistance of Counsel because his trial counsel provided ineffective assistance.

**Supporting FACTS**: ...Petitioner's counsel did not move Pursuant to Evidence R. 16B1g [sic] for any lay witness written statements. Witness Todd McCune's recollection was refreshed by his prior written statement during the course of his testimony. Although witness Sarah Dotson testified that she provided police with a written statement, Petitioner's counsel did not move to review the statements of George Carlutu or Molly Fielder, in spite of knowing that the testimony and the statements contained inconsistencies. Petitioner's counsel also failed to object when the jury was erroneously instructed that, "Possession is a voluntary act that the possessor knowingly procured or received the throwing stars/knives or was aware of his control thereof for a sufficient period of time to have ended his possession." There was no crime or testimony concerning throwing knives/stars. The alleged victim suffered a gun shot wound. Defense counsel totally failed to object to this line of instruction to the jury. This act by defense counsel fell way below the objective of standard representation. There was not even evidence presented or introduced to support such instructions.

**E.  GROUND FIVE:** The trail [sic] court erred in the sentencing of Petitioner in violation of the High Court's Decisions in BLAKELY v. WASHINGTON (2004), 542 U.S. 296,

8

APPRENDI v. NEW JERSEY (2000), 530 U.S. 466, and STATE v. FOSTER, 109 Ohio St.3d 1, 2006-Ohio-856.

**Supporting FACTS**:  In Petitioner's criminal trial, the Trial Court stated, "Very well, it is the job of the Trial Judge in fashioning a sentence which will serve as a deterrent to this individual and to others, one which will not demean the seriousness of the charges which the individual has been found guilty of by a jury of 12, and also one that will not demean the seriousness of the crime with which the defendant has been found guilt [sic] of."  The trial court went on to say, "I recently had another case very similar to this which was tried.  I have had other cases this year where firearms have been used.  Every judge in the Stark County Court of Common Pleas has been besieged with firearms cases.  Cases not...as I said in the last case, it appears as though what people are doing is settling their difficulties or differences with firearms.  They are shooting people...it is inconceivable to me that this one was done with your child in the car.  I can't fathom that at all.  I just...it just doesn't have any rational or even irrational explanation to it."  Tr. At 498-499.  Petitioner submits that when the trial judge rendered these findings he did so in violation of Petitioner's 6th Amendment Right because he made findings in excess of those decided by the jury.

F.  **GROUND SIX:** The trial court committed error by improperly charging the jury.

**Supporting FACTS**:   The trial court instructed the jury as follows, "Possession is a voluntary act that the possessor knowingly procured or received the throwing stars/knives or was aware of his control thereof for a sufficient period of time to have ended his possession."  Tr. at 457.  Petitioner was accused of shooting the alleged victim, there was absolutely no testimony about knives or throwing stars.  The alleged victim was not stabbed in this case.  Thus, the trial court's instruction was an error which also reflects on the original indictment.  The instruction was prejudicial because it confused the jury into believing that there were additional weapons involved in this case for which the jury did not receive testimony.  In other words, the instruction implied that the Petitioner had engaged in even more criminal behavior, but that this was excluded from the jury's consideration for some nefarious reason."

9

The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date.  Lindh v. Murphy, 521 U.S. 320 (1997).[4]

At the outset, the respondent asserts that petitioner's second, third, fifth and sixth claims for relief must be dismissed as procedurally defaulted as a consequence of petitioner's failure to preserve those errors for appeal by entering contemporaneous objections to them at trial.

The exhaustion doctrine requires that before filing a petition in federal habeas corpus a defendant must utilize all available state remedies, through a motion or petition for review by the state's highest court, by which he/she may seek relief based upon an alleged violation of constitutional rights.  Granberry v. Greer, 481 U.S. 129, 133 (1987).  Under the exhaustion doctrine a petitioner must "fairly present" each federal constitutional claim to the state courts before seeking relief in federal court.  Baldwin v. Reese, 541 U.S. 27 (2004);  Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995).  In so doing, state courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis for a federal constitutional issue to the state's courts may be made in four ways:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

McMeans v. Brigano, 228 F.3d 674, 681 (6th Cir. 2000), citing Franklin v. Rose, 811 F.3d 322, 326

---

[4]There are no issues of untimeliness in this case.

(6th Cir. 1987), cert. denied, 532 U.S. 958 (2001).  Accord, Whiting v. Burt, 395 F.3d 602, 613 (6th Cir. 2005); Blackmon v. Booker, 394 F.3d 399, 400 (6th Cir. 2004).  It is not enough to present the facts giving rise to the federal claim raised in habeas corpus;  a petitioner must present the same legal theory to the state courts as is presented to the federal courts in order to preserve the claim. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998).  Even if a claim is related, but distinct, the claim is nonetheless defaulted.  Lott v. Coyle, 261 F.3d 594, 607, 619 (6th Cir.  2001).

In addition, merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court[,]" does not sufficiently apprise the state court of a specific federal constitutional guarantee so as to exhaust the claim.  Gray v. Netherland, 518 U.S. 152, 162-63 (1996), citing Picard v. Connor, 404 U.S. 270, 271 (1971) and Anderson v. Harless, 459 U.S. 4, 7 (1982).  For example, use of the term "ineffective assistance" also fails to alert the state courts of the federal nature of a claim.  Baldwin v. Reese, supra.

Where a petitioner has failed to fairly present the factual and legal basis for a federal constitutional issue and where petitioner would be barred from pursuing relief on that claim in the state courts, the petition should not be dismissed for failure of exhaustion in light of the fact that there would be no available state remedies to exhaust.  Hannah v. Conley, supra at 1195-96; Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994).   Under a longstanding Ohio procedural rule, a claim which could have been but was not raised on direct appeal would be barred from being raised in a delayed appeal or in a petition for post-conviction relief.  See, Collins v. Perini, 594 F.2d 592, 593 (6th Cir. 1978).  However, the petitioner must then demonstrate cause for failure to fairly present the claims to the state courts and actual prejudice to petitioner's defense at trial or on appeal.  Gray v. Netherland, supra at 162; Coleman v. Thompson, 501 U.S. 722, 750-51 (1991); Deitz v. Money,

11

391 F.3d 84, 808 (6th Cir. 2004).

As it is the task of this Court to only consider claims which were adjudicated on the merits in the state courts, this Court generally may not address claims which were not substantively analyzed by the state courts, either due to failure to raise them before the state courts while a remedy was available or due to a state procedural rule precluding merits review of such claim. Claims which fall into that category are procedurally defaulted and may not be considered on federal habeas review. Lancaster v. Adams, 324 F.3d 423, 436 (6th Cir. 2003), citing Seymour v. Walker, 224 F.3d 542, 549-50 (6th Cir. 2000).

The Sixth Circuit Court of Appeals has delineated a four-part test for determining whether a habeas petitioner's claim is procedurally defaulted by the failure to observe a state procedural rule. First, the district court must determine whether there exists a state procedural rule with which the petitioner failed to comply. Then the court must determine whether the state court enforced the sanction for failure to comply. If so, it must next be decided whether failure to comply with the state procedural rule constitutes an adequate and independent ground for barring review of the federal constitutional claim. If all these questions are answered in the affirmative, the petitioner must satisfy the requirements set forth in Wainwright v. Sykes, 433 U.S. 72, 138 (1977) that he demonstrate cause for having failed to follow the procedural rule in question and that he was actually prejudiced by the alleged constitutional error. Greer v. Mitchell, 264 F.3d 663, 672-73 (6th Cir. 2001), cert. denied, 535 U.S. 940 (2002);  Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986). Accord, Lancaster v. Adams, supra at 436.

The state appellate court held that petitioner failed to raise a contemporaneous objection to each of these claimed errors at trial.  Despite having so found, the appellate court reviewed the

these claims under a plain error standard, as provided for under Rule 52(B) of the Ohio Rules of Criminal Procedure, and found no plain error as the claimed errors did not affect the outcome of the trial.

For purposes of habeas corpus such plain error review, however, does not vitiate any procedural default which may have occurred in the state courts.  Osborne v. Ohio, 495 U.S. 103, 124 (1990);  Scott v. Mitchell, 209 F.3d 854, 877 (6th Cir. 2000).  See also, Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000).  To the contrary, a state court's determination that a procedural default had occurred and application of plain error review, constitutes enforcement of Ohio's contemporaneous objection rule.  Williams v. Bagley, 380 F.3d 932, 968 (6th Cir. 2004).

As regards petitioner's second claim for relief, wherein he challenges the trial court's refusal to permit the defense to inquire/argue that the victim was a drug dealer, the state appellate court held as follows:

> In his second assignment of error appellant contends that the trial court's refusal to allow him to cross-examine the victim concerning whether he, the victim, had arranged to meet with appellant to sell drugs in order to show that the victim was shot as a result of a drug deal gone bad constituted a denial of due process.
>
> We will not address the merits of appellant's argument as appellant failed to preserve the error by objecting at trial and proffering the evidence he wished to present. (1T. At 197).
>
> "The effect of the granting of a motion *in limine* in favor of the State in a criminal proceeding is to temporarily prohibit the defendant from making reference to evidence which is the subject of the motion.  At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion *in limine* to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection to the record for purposes of appeal."  *State v. Grubb* (1986), 28 Ohio St.3d 199, 203, 503 N.E.2d 142, 147. (Emphasis in original).

13

(Citations and footnotes omitted).

"In general, the ruling on a motion *in limine* does not preserve the record on appeal and an appellate court need not review the ruling unless the claimed error is preserved by an objection at trial.  *State v. Grubb* (1986), 28 Ohio St.3d 199, 503 N.E.2d 142, paragraph two of the syllabus, citing *State v. Leslie* (1984), 14 Ohio App.3d 343, 344, 471 N.E.2d 503; *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph three of the syllabus; *State v. Maurer* (1984), 15 Ohio St.3d 239, 259 N.E.2d 633; *Columbus v. Sullivan* (1982), 4 Ohio App.3d 7, 9, 446 N.E.2d 485; *State v. Stiner* (July 19, 1983), Stark App. No. CA-6145, unreported; *State v. Crowley* (Aug. 27, 1998), Perry County App. No. 97 CA 69."  Id. at ¶19.

In the case at bar, appellant failed to make any such objection and proffer and therefore we conclude, consistent with Evid. R. 103, that he waived his right to object to the evidentiary issue on appeal. *State v. Grubb*, supra.

Appellant's second assignment of error is overruled.

The appellate court applied similar rationale to reject petitioner's third assignment of error

challenging trial counsel's failure to object to the prosecutor's argument at trial:

Specifically, appellant contends that the prosecutor improperly vouched for the credibility of the victim during closing argument by stating, "I believe that there is only one story you can believe." Further appellant contends that the prosecutor improperly referred to his right not to testify when she stated, "I would ask you again to review the actual evidence that was put in front of you, the actual testimony that you heard with your own ears, and find the defendant guilty..." (2T. At 440).

* * * * *

Appellant did not object to the comments to which he now claims error.  Therefore, for those instances, we must find plain error in order to reverse.

In *U.S. v. Dominguez Benitez* (June 14, 2004), 542 U.S. 74, 124 S.Ct. 2333, 159 L.Ed.2d 157, the Court defined the prejudice prong of the plain error analysis.  "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that

14

even preserved error requires reversal without regard to the mistake's effect on the proceeding. See *Arizona v. Fulminante*. 499 U.S. 279, 309-310 (1991) (giving examples). "Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as 'error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding. See *Kotteakos v. United States*, 328 U.S. 750 (1946). To affect "substantial rights," see 28 U.S.C. §2111, an error must have "substantial and injurious effect or influence in determining the...verdict." *Kotteakos*, supra, at 776, 124 S.Ct. at 2339. See, also, *State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240. See, also, *State v. Fisher*, 99 Ohio St.3d 127, 129, 2003-Ohio-2761 at ¶7, 789 N.E.2d 222, 224-225. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano* (1993), 507 U.S. at 725, 734, 113 S.Ct. 1770; *State v. Perry* (2004), 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.'" *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. *Perry*, supra, at 118, 802 N.E.2d at 646.

\* \* \* \* \*

The appellant in the case at bar mischaracterizes the prosecutor's statements. The comments concerning the "actual evidence" did not implicate the appellant's constitutional rights. Rather, the prosecutor was commenting on the lack of evidence and not on the fact that appellant had not testified, or presented a defense.

With respect to appellant's contention that the prosecutor improperly vouched for the credibility of the victim, we note that the appellant mischaracterizes the State's argument...

\* \* \* \* \*

We find no error plain or otherwise. No misconduct occurred because of the prosecutor's comments. Under these circumstances, there is nothing in the record to show that the jury would have found the appellant not guilty had the comment not been made on the part of the prosecution. *State v. Benge*, 75 Ohio St.3d 136, 141, 1996-Ohio-227.

15

The appellate court similarly found that a failure to raise a contemporaneous objection at trial to petitioner's sentencing resulted in procedural default of that claim, but that there was no plain error in any event:

> In his fifth assignment of error, appellant argues that the trial court impermissibly commented upon the seriousness of the crime in violation of *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 and *State v. Foster*, 109 Ohio St.3d 1, 2006 Ohio 856, 845 N.E.2d 470.  We disagree.
>
> * * * * *
>
> Moreover, when sentencing occurred after *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, failure to object at trial to a sentence that violates *Blakely* forfeits the issue on appeal.  *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642.  The same rationale would apply to a sentencing hearing that occurred after the decision in *Foster* was announced.  As appellant did not raise his constitutional challenge with the trial court, which he could have, appellant has forfeited the issue on appeal.
>
> Appellant's fifth assignment of error is overruled.

Procedural default was also found by the appellate court as regards petitioner's sixth claim for relief, in which he asserts that the trial court erroneously instructed the jury regarding "possession" as it related to the charge of improper handling of firearms in a motor vehicle charge, holding in pertinent part:

> As previously noted the trial court's mention of "throwing stars/knives" was taken from a form jury instruction and not intended to be inserted into the jury instructions for improperly handling firearms in a motor vehicle.
>
> Rule 30 of the Ohio Rules of Criminal Procedure provides that a party must object to an omission in the court's instructions to the jury in order to preserve the error for appeal.  "A criminal defendant has a right to expect that the trial court will give complete jury instructions on all issues raised by the evidence."  *State v. Williford* (1990), 49 Ohio St.3d 247, 251-252 (Citations omitted.)  Where the

trial court fails to give complete or correct jury instructions the error is preserved for appeal when the defendant objects, whether or not there has been a proffer or written jury instruction offered by the defendant. (Id.). Even if an objection is not made in accordance with Rule 30 of the Ohio Rules of Criminal Procedure, or a written jury instruction is required to be offered by the defendant, Rule 52(B) of the Ohio Rules of Criminal Procedure, the so-called "plain-error doctrine" applies to the failure of the court to properly instruct the jury on "all matters of law necessary for the information of the jury in giving its verdict..." pursuant to Section 2945.11 of the Ohio Revised Code. *See*, *State v. Williford*, supra; *State v. Gibbons* (1977), 52 Ohio App.2d 70; *State v. Bridgeman* (1977), 51 Ohio App.2d 105.

In *Neder v. United States* (1999), 527 U.S. 1, 119 S.Ct. 1827, the United States Supreme Court held that because the failure to properly instruct the jury is not in most instances structural error, the harmless-error rule of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to a failure to properly instruct the jury, for it does not necessarily render a trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

In the case at bar, appellant concedes that he did not object nor did he request the trial court correct the instruction. Accordingly, our review of the alleged error must proceed under the plain error rule of Crim. R. 52(B).

Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.

In *U.S. v. Dominguez Benitez* (2004), 542 U.S. 74, 124 S.Ct. 2333, the Court defined the prejudice prong of the plain error analysis. "It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even preserved error requires reversal without regard to the mistake's effect on the proceeding." See *Arizona v. Fulminante*, 499 U.S. 279, 309-310 (1991) (giving examples).

17

"Otherwise, relief for error is tied in some way to prejudicial effect, and the standard phrased as 'error that affects substantial rights,' used in Rule 52, has previously been taken to mean error with a prejudicial effect on the outcome of a judicial proceeding.  See *Kotteakos v. United States*, 328 U.S. 750 (1946).  To affect "substantial rights," see 28 U.S.C. §2111, an error must have "substantial and injurious effect or influence in determining the...verdict."  *Kotteakos*, supra, at 776." Id. at 81-82; 124 S.Ct. at 2339.  See, also, *State v. Barnes* (2002), 94 Ohio St.3d 21, 759 N.E.2d 1240.

The defendant bears the burden of demonstrating that a plain error affected his substantial rights.  *United States v. Olano* (1993), 507 U.S. at 725, 734, 113 S.Ct. 1770; *State v. Perry* (2004), 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646.  Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.'" *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus.  *Perry*, supra, at 118, 802 N.E.2d at 646.

Based upon the record and our disposition of appellant's first and fourth assignments of error we find that appellant has failed to demonstrate that the trial court's misstatement to the jury affected his substantial rights.

Accordingly, appellant's sixth assignment of error is overruled.

Applying the <u>Maupin</u> four-part analysis to the foregoing, the petitioner failed to comply with Ohio's contemporaneous objection rule[5] and no plain error was found.  Ohio courts enforce the contemporaneous objection rule, and to the extent that the state appellate court did so, that was an adequate and independent ground on which the court could rely to preclude merits consideration of these claims.  Consequently, petitioner is required to show cause for the procedural error and actual prejudice to his case, which he has not done on this particular issue.

That being so, petitioner's second, third, fifth and sixth claims for relief have been

---

[5]That rule can be found in <u>State v. Campbell</u>, 69 Ohio St.3d 38, 630 N.E.2d 339 (1994).

procedurally defaulted and should be dismissed on that basis.

Turning to the merits of the remaining claims for relief, being the first and fourth claims, the role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). A state court adjudication is deemed as being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." A state court adjudication is deemed as involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court...as of the time of the relevant state-court decision;" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme

Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply."  120 S.Ct. at 1519-1520.   In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable."  Id. at 1521.

The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable. Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000), citing Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 121 S.Ct. 808 (2001).

In his first claim for relief the petitioner challenges the sufficiency of the evidence relied upon to convict him at trial.[6]

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in Jackson v. Virginia, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Accord, McKenzie v. Smith, 326 F.3d 721, 727 (6th Cir. 2003); Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003).  In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses.  Herrera v. Collins, 506 U.S. 390, 401-402 (1993);  Jackson v. Virginia, 443 U.S. at 319, n.13; Brown v. Davis, 752 F.2d 1142 (6th Cir. 1985).

---

[6]To the extent, if any, that petitioner argues that his conviction was against the manifest weight of the evidence, that argument presents a question of state law and does not raise a question of violation of a federal constitutional right. Tibbs v. Florida, 457 U.S. 31, 47 (1982); Johnson v. Havener, 534 F.2d 1232, 1234 (6th Cir. 1976).

That standard has been modified somewhat by §2254(d) in that questions of sufficiency of the evidence are mixed questions of law and fact upon which a writ may be granted only if the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2).  Starr v. Mitchell, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

The state appellate court reviewed petitioner's claims that he was convicted without sufficient proof and held in pertinent part as follows:

> In his first assignment of error, appellant maintains that his convictions are against the sufficiency of the evidence and against the manifest weight of the evidence.  We disagree.
>
> A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, superceded by constitutional amendment on other grounds as stated by *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668.  "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion."  *State v. Thompkins*, supra at 78 Ohio St.3d 390.
>
> In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution.  *State v. Jenks* (1991), 61 Ohio St.3d 259, superseded by the State constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89.
>
> Specifically, an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the

21

defendant's guilt beyond a reasonable doubt. *State v. Jenks*, supra. This test raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.2d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins*, 78 Ohio St.3d at 386.

* * * * *

In the case at bar, appellant was convicted of felonious assault with a firearm specification. R.C. 2903.11(A) provides a definition of felonious assault:

> "(A) No person shall knowingly do either of the following:
>
> "(1) Cause serious physical harm to another or to another's unborn;
>
> "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance***."

R.C. 2901.22 defines "knowingly" as follows:

> "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

Appellant was further convicted of improperly handling firearms in a motor vehicle. R.C. 2923.16 provides in relevant part:

> "(B) No person shall knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

Finally, appellant was convicted of one count of child endangering. R.C. 2919.22 provides in relevant part:

22

"(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support..."

Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff* (2001), 145 Ohio App.3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel* (May 1, 1998), Montgomery App. No. 16221, (citing *State v. Elliot* (1995), 104 Ohio App.3d 812, 663 N.E.2d 412).

Appellant does not dispute that the victim was shot in the buttocks with a handgun. The victim underwent surgery and has a permanent scar. (1T. at 176-177). Accordingly, the State presented sufficient evidence that the victim suffered "serious physical harm." R.C. 2901.01(A)(5). Further, the State presented sufficient evidence that a "firearm" was used during the commission of the offenses. R.C. 2923.11; R.C. 2941.145. The State also presented testimony that appellant's one-year-old daughter was in the car at the time the shooting occurred. (1T. at. 169-170). Finally, the State presented evidence that appellant had a loaded handgun in the car which he retrieved in order to threaten the victim. (1T. at 170-172).

Appellant's main argument is that the victim attempted to rob him, the appellant, and that the victim was shot during a struggle for the gun. However, the record contains no evidence to support either a claim of accident or a claim of self-defense.

After viewing the evidence in a light most favorable to the prosecution, we find that any trier of fact could have found that appellant was guilty of all of the charges.

As noted above, appellant and the victim had played cards at the victim's home on several occasions. (1T. at 167-168; 182; 206). Appellant telephoned the victim and asked him to meet him at the location where the shooting occurred. (1T. at 167-168). Appellant arrived driving a blue Chevrolet Impala with tinted windows. (1T. at 169-170). His infant daughter was in a car seat in the back seat

23

of the car.  (Id.)  Tammy Young, appellant's girlfriend at the time, and mother of his one-year-old daughter, owns a dark blue Chevrolet Impala.  (1T at 290-291).  Ms. Young testified that appellant has keys to the vehicle and does drive it on occasion.  (Id. at 252).  Ms. Young further testified appellant was caring for the couple's daughter on the day of the shooting while she was at work.  (1T. at 254).  Bloodstains on one of appellant's jackets matched that of the victim.  (2T. at 345).  When shown the victims picture, appellant denied that he knew him.  (1T. at 294).

Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crimes of felonious assault, improperly handling firearms in a motor vehicle and endangering children.

We hold, therefore, that the State met its burden of production regarding each element of the crimes and, accordingly, there was sufficient evidence to support appellant's convictions.

The state appellate court found the evidence sufficient to prove the elements of the crimes charged.  In so doing, the state appellate ruling, which relied entirely on state authorities, neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.  That is particularly so where the circumstantial evidence tied petitioner to the crimes with which he had been charged, by demonstrating a prior connection between the victim and petitioner; the connection between the vehicle at the crime scene, which petitioner was seen driving the day of the shooting, and petitioner's girlfriend's vehicle; the connection between the description of the assailant as having worn a light colored jacket, which petitioner was observed wearing the day of the crime, and the fact that bloodstains on petitioner's light colored jacket were determined to have been the victim's; and the connection between the testimony that there was a small child in the

vehicle (which matched the description of petitioner's girlfriend's vehicle) at the time of the shooting, and the fact that petitioner's girlfriend had a small child who was under petitioner's care on the day of the shooting.  That being so, petitioner's first claim for relief is without merit.

In his fourth claim for relief the petitioner argues that he was denied the effective assistance of trial counsel.

A petitioner claiming ineffective assistance of counsel must demonstrate that counsel's conduct was so far below acceptable standards of representation that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution, and that such deficient performance so prejudiced the defense as to render the trial unfair.  Strickland v. Washington, 466 U.S. 668 (1984).  See also, United States v. Bavers, 787 F.2d 1022 (6th Cir. 1985).  Disagreement by a defendant with tactics and/or strategy will not support a claim of ineffective assistance, and a petitioner in habeas corpus must overcome a presumption that challenged conduct of counsel was a matter of strategy, Strickland, 466 U.S. at 689.  Accord, Wilson v. Yukins, unreported, 1999 U.S.Dist. LEXIS 7644 (E.D.Mich. 1999).   The prejudice prong of the test may be satisfied by a showing that counsel's error deprived the petitioner of a fundamentally fair trial which resulted in a verdict lacking in reliability.  Kimmelman v. Morrison, 477 U.S. 365 (1986).

Under the AEDPA this Court must first determine whether the state court's application of the Strickland standard was objectively unreasonable.  Alley v. Bell, 307 F.3d 380, 400 (6th Cir. 2002), quoting Bell v. Cone, 152 L.Ed.2d 914, 122 S.Ct. 1843, 1852 (2002) ("under §2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly.  Rather, [petitioner] must show that the [state court] applied

25

Strickland to the facts of his case in an objectively unreasonable manner." (Citation omitted.)).

The state appellate court rejected petitioner's claims of ineffective assistance of appellate

counsel, holding in pertinent part:

>A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry in whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180; *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136.

>In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. *Bradley*, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

>In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial; a trial whose result is reliable. *Strickland* 466 U.S. at 687, 694, 104 S.Ct. at 2064, 2068. The burden is upon the defendant to demonstrate that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.; *Bradley*, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, supra; *Bradley*, supra.

>The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Bradley* at 143, quoting *Strickland* at 697. Accordingly, we will direct our attention to the second prong of the *Strickland* test.

>Appellant's assignment of error concerns his counsel's failure to

26

request an in camera inspection of written witness statements and police reports available, pursuant to Crim.R. 16(B)(1)(g) for the purposes of impeaching the State's witnesses on cross-examination. Appellant does not articulate how requesting an in camera inspection of the witness statements would have resulted in a different outcome or trial strategy.

Prior to trial, the defendant may file a motion which seeks discovery of reports of either the testifying officer or a witness' narrative statement, which would be substantially recorded in verbatim without selection or interpretation by the transcriber. *State v. Johnson* (1978), 62 Ohio App.2d 31, 403 N.E.2d 1003.

Pursuant to Crim.R. 16, where there has been a demand for an in camera inspection of a witness' statement, it is mandatory that the court grant the defendant's motion for an inspection. *Cleveland v. Austin* (1978), 55 Ohio App.2d 215, 380 N.E.2d 1357. The defendant, however, is not entitled to discovery of all reports. *State v. Smith* (1976), 50 Ohio App.2d 183, 362 N.E.2d 1239.

Criminal Rule 16(B)(1)(g) states, in part:

"(A) Demand for Discovery. Upon written request each party shall forthwith provide the discovery herein allowed. Motions for discovery shall certify that demand for discovery has been made and the discovery has not been provided.

"(B) Disclosure of Evidence by the Prosecuting Attorney.

"(1) Information subject to disclosure

\* \* \* \* \*

"(g) *In camera inspection of witness' statement.* Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

Appellant argues that trial counsel's failure to follow Crim. R. 16 concerning in camera inspection of witness statements constitutes ineffective assistance of counsel.  We cannot determine whether counsel erred, or whether appellant was prejudiced by any error, as the witness statements are not a part of the record on appeal.  *State v. Nieb*, Stark App. No. 2001CA00349, 2002-Ohio-4666; *State v. Bachtel*, Holmes App. No. 99-CA-011, 2002 Ohio 2528.

Further, we note that counsel did impeach the victim at trial with his drug use.  (1T. at 194-195). Counsel further cross-examined the victim concerning his two prior felony convictions, one of which was for trafficking in drugs.  (1T. at 196).  Additionally, counsel elucidated testimony that the victim was able to pay child support in spite of the fact that he was not employed.  (1T. at 195). The record contains no evidence that the written statements of Mr. McCune and Ms. Dodson contained exculpatory information or would otherwise have exonerated appellant.  The jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness' credibility.

Where there is sufficient independent evidence of a defendant's guilt, there is no prejudice and reversal is unwarranted.  *State v. Moritz* (1980), 63 Ohio St.2d 150, 407 N.E.2d 1268.  The alleged victim in this case, testified at trial and was subjected to full cross-examination by defense counsel. As we noted, reversal of a conviction or sentence based on ineffective assistance requires finding both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373.

28

As to appellant's claim of ineffective assistance concerning failure to request a Crim.R. 16(B)(1)(g) inspection of the statements, appellant fails to establish prejudice, namely, "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. Since the issue may be disposed of under the second prong of the *Strickland* test, there is no need to consider whether the failure to make such a request was ineffective assistance of counsel.

Appellant next argues that counsel was ineffective in failing to object to a jury instruction given on "possession" during the portion of the jury instructions on the charge of improperly handling of firearms in a motor vehicle charge.  Again, appellant does not articulate how objecting would have resulted in a different outcome or trial strategy.

This Court finds that the state appellate court's conclusion that the petitioner's trial counsel's failure to request an in camera inspection of written witness statements and police reports available in order to impeach prosecution witnesses, and his failure to object to a jury instruction given on "possession," did not rise to the level of ineffective assistance of counsel was not an objectively unreasonable application of <u>Strickland</u> to the facts of this case, nor was it an unreasonable determination of the facts in light of the evidence presented, particularly considering the fact that trial counsel did impeach the victim regarding his involvement in the drug world, the fact that there was no indication that such witness statements included exculpatory evidence, both of which would impede a showing of prejudice which is necessary in order to establish ineffective assistance.  In addition, there is no indication of how the outcome of the case would have been different if the judge had instructed the jury on "possession" in the manner suggested by petitioner.  Having failed on the prejudice prong, petitioner's claim of ineffective assistance of counsel must fail.

The balance of petitioner's claims for relief having been procedurally defaulted, in light of

all the foregoing it is concluded that no claim of constitutional violation has been presented requiring further proceedings prior to disposition on the merits and it is, therefore, recommended that the petition be dismissed without further proceedings.


s/DAVID S. PERELMAN
United States Magistrate Judge


DATE:   June 9, 2009


## OBJECTIONS

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).